MISSOURI PACIFIC R'Y CO. v. J. T. JARRARD.

(Case No. 1994)

1. PRACTICE IN SUPREME COURT—Where the answer of a witness has been objected to on the ground that it was not responsive to the question propounded, and the record states neither the language nor the substance of the question, it will be assumed that the trial court, in overruling the objection, considered that the interrogatory did call for the answer given, and the court's ruling in that particular will not be revised, in the absence of a knowledge of what the interrogatory was.

2. DAMAGES—PERSONAL INJURY—LOSS OF TIME—If one, in the employ of another, has lost time by reason of a personal injury caused by the negligence of a third person, he is entitled, in a suit against the latter for damages, to compensation for such loss, notwithstanding his wages may have been continued during the time, either as a provision of his contract or as a grace of his employer.

3. EVIDENCE—COSTS—DEPOSITIONS—MERE FAILURE TO USE, NO GROUND FOR TAXING PARTY WITH EXPENSE OF TAKING—It is the right and the duty of a plaintiff to prepare his case for trial, and the mere fact that he has not used a lot of testimony taken by him, shows no abuse of the privilege of accumulating costs, and affords no reason for taxing him with the expense of obtaining the evidence not used. (Citing G., C. & S. F. R y Co. v. Evansich, 61 Tex. 3.)

4. RAILROADS—EVIDENCE—OPINION OF WITNESS—See this case, wherein it is held not to be error, in a suit by a passenger against a railway company for damages, because of personal injuries received in an accident on its road, to permit witnesses, though not possessing special knowledge as railroad experts, to state their opinions as to the unsafe condition of the company's track at the point of accident, after having testified to actual knowledge of the road, and to the facts upon which their opinions were founded.

5. SAME—TESTIMONY OF EXPERTS—SPECIAL INSTRUCTIONS TO JURY—See this case for special charge held to have been properly refused, because it sought to have applied to a railway company's care of its road the test of the judgment of experienced railroad men upon the safety of its track.

6. SAME—EXCESSIVE VERDICT—See this case for verdict held not to be excessive, under the facts.

ERROR from Walker. Tried below before the Hon. Norman G. Kittrell, special judge.

This was a suit for damages, brought by J. T. Jarrard, against the Missouri Pacific Railway company, lessee of the International and Great Northern railway, for personal injuries, received in an accident to one of the defendant's trains, upon which the plaintiff was, at the time, a passenger. Plaintiff was an employe of the lessees of the state penitentiary, and was, at the time of the accident, traveling on their business from Huntsville, Texas, to Cincinnati, Ohio. When near Overton, Texas, a station on defendant's road, the train, upon which plaintiff was a passenger, was derailed, in the night time, and he thereby injured.

The petition alleged, as the cause of the derailment, that defendant

had failed to provide a safe track ; that its track was, at the time, in an unsafe condition for travel, because of rotten ties and broken rails, which defendant had neglected to remove and replace with sound ones, and that the train was running at a speed of forty miles an hour, which was dangerous.   The petition further alleged that, by reason. of the derailment, the plaintiff was bruised on the head, face, thigh and hip, and was knocked senseless, his ankle badly wrenched and sprained, and he, in other respects, greatly bruised, wounded and in-- jured, and thereby made sick, sore and lame for a long time there-- after, and was still unable to perform labor.   Plaintiff laid his dam-- ages at $5,065, which included money and purse lost in the wreck, and expenses of sickness, etc.

The defendant pleaded general issue, special denial of the bad con- dition of the track, and averred that its road was maintained with due and proper care, and in the most approved and effective manner; and that plaintiff's injuries were the result of an accident necessarily incident to railroad travel, which could not be foreseen or guarded against by human skill or foresight.

W. A. Johnson, W.W. Burrows, Aaron Dennis and W.W. Daw- son, witnesses on behalf of the plaintiff, deposed, in substance, as follows :

W. A. Johnson—"I was a passenger on the north-bound train of the International and Great Northern railway, about the last days of January, 1883.   About 12 o'clock at night, the train was derailed and thrown from the track down a dump.   The train was running about thirty-five or forty miles an hour.   It was a broken rail on the track that produced the wreck.   It is my impression that the rail was broken in two places, and, certainly, it was broken in one place.   I got out of the train, about the same time the conductor got out, and started back, with a light, to examine the road.   I followed close be- hind him, looking for a break in a rail; the conductor was looking for a broken rail and the cause of the wreck. When we came to where it was broken, I saw that the iron had been run over by the cars since the break.   There was a tinge of rust at the edge of the break, and it ap- peared to have been rubbed together at the broken ends.   The con- ductor held his light to the break but a short time, remarking, at the time :  'Here it is.'   I was over the road the morning previous to the wreck, and observed a defect in the road.   Judging from the jolting of the train, particularly at the place where the rail was broken, *I concluded the road was in bad condition.* There were three cars derailed. The wreck took place about three miles south of the town of Overton.

I don't know how long the track had been in that condition—can judge only from appearances. *I don't think it was safe to run trains over this part of the road on regular schedule time; and at this particular place, it was unsafe to run over it at all.*"

W. W. Burrows—" I reside near Overton, Smith county, Texas, and resided there at the time of the wreck spoken of. The wreck occurred on January 29 or 30, 1883. I visited the place twelve or more hours after it occurred, and saw where there had been another rail put in, and some broken pieces of rail were lying near the track. I think the wreck was caused by a broken rail. I saw two or three pieces lying outside the road. It was an old rail that was broken. Do not think that any of the trak was safe at that time, as it was old iron, as far as I could see, in that part of the road. I was not acquainted with the road all the distance from Troupe to Overton, but was acquainted with it at the place of wreck, having lived very near it since it was built. *The condition of the road at the place was very bad.* It was constructed of old iron and pieces of rails. The rails were fastened together with bars and bolts, I think, two holes and bolts in each end, but I often saw rails with bolts out."

Aaron Dennis—" I resided in Smith county in January, 1883. The cars on the International and Great Northern railway, north-bound train, leading from Palestine to Overton, Texas, were wrecked, on January 29 or 30, 1883. I was acquainted with the railroad track between Troupe and Overton at the time and before the wreck occurred. *I considered the condition of the road bad.* I walked over the road frequently to and from my work, and to Overton, a distance of four miles. I do not know of any particular repairs near the place of wreck before the wreck. I have seen them repairing the road with old rails and pieces of rails. Never saw them use any new rails until they commenced putting down steel rails, which has been since the wreck. The rails were fastened at the ends by bars and bolts. The rails and bars had two holes in each end, and in some places the holes were filled with bolts, but in many places the bolts were out. I saw some sound and some rotten ties, and some broken in two in the middle. I have stepped on one end of a tie, and the other end would rise up. *I did not consider it safe for trains to pass over the road.* I saw several places, near the place of wreck, where the trains, in passing over, would cause the ties to sink down, and, when they had passed off, the ties would rise up, making a mud-hole, and the mud would fly up on the bottom of the cars."

Dr. W. W. Dawson—" I am a physician and surgeon. Have been practicing more than twenty-five (25) years in the city of Cincinnati,

Ohio. On February 1, 1883, I was called to see J. T. Jarrard, at the Burnett house, in Cincinnati, and found him suffering with contusion of head, face and ear, contusion of left thigh and hip, and sprained ankle. I was called to see him concerning his injuries, above set forth. The sprained ankle was much the most serious of his injuries. At the time of my visit, he was unable to move it without assistance. Handling it gave him great pain. The lateral ligament, the deltoid, had been ruptured, or violently stretched; presume at the joint of its attachment it gave him most pain. There was slight eversion of the foot, not so much, however, as follows the complete rupture of ligaments. The contusions about the head, face and ear were slight. The injury to the thigh and hip seemed to involve the tissues over the bone alone. I received from Mr. J. T. Jarrard $25.00 for my services."

The plaintiff testified as follows : "On the day before the wreck, I bought a ticket of defendant, at Huntsville, from there to Cincinnati, and paid for it $39.95. I knew nothing of the condition, or of any defect, of defendant's road. I took the sleeper, after getting on the main line, and paid $5.00 for the ticket. I was asleep when the train was derailed. When the sleeper was turned over, I was bruised on the side of my head, face and ear, and on the hip and ankle. I was insensible to my condition for awhile, and, when I became conscious, the passengers were administering to my sufferings. I was taken from the sleeper and removed to another car. The train, at Palestine, was reported about one hour late. I was put into another sleeper, and made as comfortable as possible. but suffered a great deal, particularly from my ankle. I continued on my journey to Cincinnati, as I was on important business. At the depot I met Mr. Simpson, to whom I had telegraphed, and he and others put me into a carriage, and took me to the hotel. He also procured the services of Dr. W. W. Dawson, who arrived at my room about midnight. I suffered intensely with my ankle all the time I was in Cincinnati, which was about eight (8) days, nearly a week longer than I would have stayed but for my injuries. I could, and would, have transacted my business there in a day or two had I been able to give it attention. I have continued to suffer with my ankle, and suffer now, at times, a great deal with it, particularly after walking or standing on it through the day. My left foot is out of its natural position, and, when I walk on an uneven surface, I need a cane, but can walk on a smooth surface without it. When my left foot strikes an uneven surface, it gives me great pain. When I got hurt, I lost a pocket-book, for which I paid $1.00. I also lost $39.00 in money. I paid Dr. W. W. Dawson $25.00 for his

attention and services. I am still lame. I have retained my situation ever since I was hurt. Have lost no time, or, rather, have been paid regularly for my services, and no deduction has been made from my salary. I was then in the employ of Cunningham & Ellis, and had charge of the wagon-shops at the state penitentiary.''

Those portions of the testimony of the witnesses, Johnson, Burrows and Dennis, which are italicized, were objected to by the defendant : first, because they were the mere conclusions of the witnesses, drawn from the facts testified by them, and the jury should be free to form their own opinion from the facts in evidence; second, because the witnesses had not shown themselves qualified, as experts, to pass upon the condition of defendant's road with respect to its safety for travel.

A motion to exclude this testimony was overruled, and the evidence admitted.

The defendant introduced several witnesses, who, having shown themselves, from long service and experience, to be railroad experts, testified that they knew the condition of defendant's road, at the point and at the time of the accident complained of, and that the track was, at that particular time and place, in a safe condition for passenger travel, at a speed of thirty-five or forty miles an hour. The engineer testified that the train, at the time of its derailment, was running at a speed of about twenty-two miles an hour.

The special charges asked by the defendant, and refused by the court, the refusal of which is assigned as error, are as follows :

1. If you believe, from the testimony, that defendant's track and rails, at the time and place where the accident occurred, were in such condition as, in the judgment of experienced railroad men, were reasonably safe for passenger travel, as far as they could see, and that the train, at the time of the accident, was not being run at a rate of speed which was dangerous to passenger travel on that road, then you will find for the defendant.

2. In determining whether defendant's track and rails, at the place of the accident, were in a reasonably safe condition, you may take into consideration the testimony as to their condition at other points than that at which the accident occurred ; but, if the proof shows that the track and rails, at the place of the accident, were in a reasonably safe condition for passenger trains, then the fact that its rails and tracks were not in a reasonably safe condition at other places than that at which the accident occurred would not entitle the plaintiff to recover.

The cause was tried before a jury, and resulted in a verdict and

judgment in favor of the plaintiff for $2,565. The defendant excepted, and has brought the case to this court by writ of error.

*Baker, Botts & Baker,* for plaintiff in error, on the questions discussed in the opinion, cited : Sedgwick on Damages, 6th ed., top p. 748 ; marg. p. 589 ; Clardy *v.* Callicoate, 24 Tex. 170 ; Purnell *v.* Gaudy, 46 Tex. 191; H. & T. C. R'y Co. *v.* Reason, 61 Tex. 613 ; Railway Co. *v.* Hopkins, 78 Ill. 32; Railway Co. *v.* Faber, 63 Tex. 344 ; March *v.* Walker, 48 Tex. 372 ; I. & G. N. R'y Co. *v.* Stewart, 57 Tex. 166 ; Altgett *v.* Brister, 57 Tex. 432 ; I. & G. N. R'y *v.* Ormond, 62 Tex. 274 ; C. & N.W. R'y Co. *v.* Swett, 45 Ill. 198 ; Cook *v.* Dennis, 61 Ill. 246.

*Abercrombie & Randolph,* for defendant in error, on the questions discussed in the opinion, cited : M. P. R'y Co. *v.* Martin, Tex. Law Rev., vol. 5, p. 611 ; 1 Wharton on Ev., sec. 510 ; Gonzales College *v.* McHugh, 21 Tex. 256 ; I. & G. N. R'y Co. *v.* Klaus, Tex. Law Rev., vol. 5, p. 565; 1 Wharton on Ev., sec. 512 and note 10 ; Clinton *v.* Howard, 42 Conn. 306, 307; T. & P. R'y Co. *v.* Levi & Bro.. 59 Tex. 684 ; Sedg. on Damages, 36, and note 2, and note on p. 700 ; M. P. R'y Co. *v.* Collier 62 Tex. 318 ; T. & P. R'y Co. *v.* DeMilley, 60 Tex. 199 ; Wilson *v.* Lorane, 15 Tex. 492 ; Norvell *v.* Oury, 13 Tex. 31; Railway Co. *v.* Martin, Tex. Law Rev., vol. 5, p. 611.

ROBERTSON. ASSOCIATE JUSTICE.—Neither the language nor the substance of the fifth interrogatory to the witness, W. A. Johnson, is stated in the record. The answer to it is that he knew the road was in bad condition from the jostling of the train, and this answer is objected to on the ground that it is not responsive to the question. The bill of exception does not state that the answer was not responsive, but that it was objected to on that ground, and that the objection was overruled. We assume that the court considered that the interrogatory did call for the answer given, and, without knowing what the interrogatory was, we cannot revise the ruling.

The opinion that the railroad track, at the time and place where the wreck occurred, was out of repair and in an unsafe condition, testified by Johnson and other witnesses, was objected to on two grounds : First, that the subject was *not* one of common information, and the witnesses did not qualify as experts; and, second, that the subject *was* one of common information, and the jury could form their own opinion.

It is not necessary to determine which of the inconsistent bases of

objection is correct. The witnesses had actual knowledge of the particular part of the road in question, and testified as fully as they could to the facts upon which their judgments were founded. This brought their opinion clearly within the rule, if the matter was one requiring technical or special information. Wharton on Ev., sec. 513.

On the other hand, the opinions were admissible, if the condition of the road could be judged of by men of ordinary information, for the reason that the witnesses, from actual observation, had acquired knowledge, which could only be communicated to the jury as a result. A juror would be as competent as the witness to form an opinion, if he had seen what the witness saw, but what the witness observed "cannot be reproduced and made palpable in the concrete to the jury" —"language is not adequate to such realization." The aggregate impression is what is reported to the consciousness and preserved in the memory, and that is susceptible of expression only in the form of an opinion. Wharton on Ev. sec. 511. The leading facts consciously conducing to the opinion can and must be stated, but the appearance of the road, made up of patched rails, worn or rusted in various degrees, some properly, some partially, and some not at all, fastened together at the ends ; the ties in all the stages of decay, some with the iron spiked to them and some not, some in a socket of mud, and some firmly embedded in the earth, the roughness of the track, perceptible with precision at a glance, but insusceptible of accurate portrayal, in words, each of which contributes to the general appearance an indefinable part, this whole appearance of the road cannot be adequately stated in language. Its best reproduction is in the shape of an opinion. What can be stated, is sufficient to test the witness' knowledge and accuracy of observation, and upon these depends the value of the opinion. Upon either of the irreconcilable hypotheses, upon which the testimony was opposed, we think it was properly admitted. The defendant in error testified that the injury he sustained caused him to lose a few days' time in Cincinnati, but that his employers made no deduction, on this account, from his wages. He lost time as a result of the injury, and was entitled to be compensated for this loss. If the continuance of his wages was a provision of his contract, or a grace of his employers, the defendant was not entitled to the benefit of either. The time was lost by him, and what it was worth, he was properly authorized to recover.

If the charge omitted to confine the estimate of compensation for mental and physical suffering to the case made by the evidence, the error cannot be complained of here, as the attention of the trial court to the omission was not called in any way.

The first special charge requested by the defendant was properly refused.   It sought to have applied to the defendant's care of its road, the test of the judgment of experienced railroad men upon the safety of the track.   A railroad man may be ever so experienced, and, yet, wholly incompetent—he may be reckless of human life, notwithstanding his experience.   The charge of the court upon this point of diligence was all that the defendant could lawfully require.

The charge of the court authorized a verdict for the plaintiff, on the issue as to the condition of the track, only if the jury should believe the road was in bad condition at the time and place of the injury. This was the substance of the third special charge, and its refusal was not error.

The verdict was not excessive under any rule this court has ever announced or acted upon.   The verdict was for $2,565—forty of this was for a purse and money lost in the wreck; twenty-five for doctor's bill actually paid out in Cincinnati, for painful bruises about the face and head, a wound on the hip, and for a very painful and, probably, permanent injury to the ankle.   The remaining $2,500 cannot be considered an unconscionable assessment of damages.

The motion to charge the plaintiff with the cost of taking depositions, not used on the trial, was justly denied.   It was the right and duty of the plaintiff to prepare his case for trial, and the mere fact that he has not used a lot of testimony, probably taken to disprove a defense not urged, or strengthen a point not contested, shows no abuse of the privilege of accumulating costs, and affords no reason for taxing the plaintiff with the expense of obtaining the evidence not used. G. C. & S. F. R'y. v. Evansich, 61 Tex. 3.

There is nothing in the record showing that the rules of law have not been followed, or that the justice of the case has not been accomplished, and the judgment is therefore affirmed.

AFFIRMED.

[Opinion delivered February 23, 1886.]