UNITED STATES FIDELITY & GUARANTY CO., Appellant,

v.

Mrs. Olga VALDEZ et al., Appellees.

No. 14511.

Court of Civil Appeals of Texas.

Houston.

April 29, 1965.

Rehearing Denied May 27, 1965.

Wiley Thomas and Ballard Bennett, Angleton, for appellant.

Helm, Jones & Pletcher and George E. Pletcher, Houston, for appellees.

BELL, Chief Justice.

The appellant, who was defendant and cross-plaintiff in the trial court, claimed it was subrogated to the rights appellees had against M & M Air Service, Inc., which concern through negligence brought about the death of the husband and father of appellees. Appellant, as the insurance carrier for deceased's employer, had paid appellees compensation under a voluntary workmen's compensation policy. It claims subrogation to the extent of its payment together with a reasonable attorney's fee. Judgment was in favor of appellees.

Modesto Valdez, Jr., was the husband of Olga Valdez and the father of the other five appellees, all of whom were minors. He was employed as a farm laborer by Bar X Ranch. On January 4, 1962, he, while acting in the course and scope of his employment, was killed by the propeller of an airplane owned and operated by M & M Air Service, Inc. The plane was spraying crops on the Bar X Ranch for Modesto's employer. It became stuck in the mud and he was assisting in an effort to get the plane free. There is no suggestion of any negligence of the employer or its representatives.

On April 16, 1962 appellees filed suit against appellant to recover benefits provided by the voluntary compensation policy. On the same day an agreed judgment was rendered in favor of appellees for $11,-030.25 and $500.00 funeral expenses. This is the full amount that would be owing under the policy of insurance for voluntary workmen's compensation. The attorneys representing appellees in that suit were not the attorneys thereafter representing them in the suit for damages against M & M Air Service, Inc., or in this suit. The compensation suit was found by the trial court to be a "friendly" one. As shown by the court's findings of fact the term "friendly suit" is used to mean a suit where there was no dispute as to liability or that the full amount of the compensation was owed. The judgment was approved as to form by counsel for appellees, the minors' attorney ad litem and the attorney for appellant. It contained this provision:

"It is further provided that nothing contained in this Judgment shall release or prejudice any right of Olga Quintero Valdez or the minor Plaintiffs in any right that they might have against any third party responsible for the death of Modesto O. Valdez other than United States Fidelity & Guaranty Company, David C. Bintliff or Bar-X Ranch of Brazoria County, Texas."

By a release dated April 14, 1962, Olga Valdez, acting individually and as next friend of the minor children, released appellant, Bintliff and Bar X Ranch from all liability for the death of the deceased. It recites the payment of voluntary compensation that was being made; that Modesto was in the course and scope of his employment; that, being a farm hand, he was not covered by the Texas Workmen's Compensation Law; and that the payment is in satisfaction of a disputed claim. There is then this provision:

"It is further provided that nothing contained in this release shall release or prejudice any right of Olga Quintero Valdez or the minor Plaintiffs in any right that they might have against any third party responsible for the death of Modesto O. Valdez other than United

States Fidelity & Guaranty Company, David C. Bintliff or Bar X Ranch of Brazoria County, Texas."

In August, 1962, appellees, through present counsel, filed suit against M & M Air Service, Inc. in the District Court of Brazoria County seeking damages for the death of Modesto, basing the suit on the defendant's negligence.

On January 4, 1963, appellant filed a petition in intervention in the last case, asserting it was subrogated to appellees' rights to the extent of its compensation payments and also seeking an attorney's fee. A copy of the petition was sent to appellees' counsel and it was received by him shortly after that date. No citation on the petition in intervention was requested or issued. The defendant in the case filed its answer. When the case came on for trial in April, 1963, appellees and the defendant announced to the court they had reached a settlement of the case in the amount of $30,000.00. Appellant's counsel was present asserting its rights to subrogation. Appellees, over appellant's protest, took a nonsuit.

On July 8, 1963, appellees filed a new suit against M & M Air Service, Inc. On the same day an agreed judgment in favor of appellees for $30,000.00 was rendered and entered. Appellant knew nothing of this suit.

On November 22, 1963, appellees filed suit against appellant and Bank of the Southwest National Association for a declaratory judgment concerning appellant's and appellees' respective rights. The Bank, who holds the disputed funds in escrow, was later dismissed. Appellees claim appellant is not entitled to subrogation.

Appellant by its cross-action which impleads M & M Air Service and its insurer, asserts that it is entitled to subrogation on three grounds:

1. In equity merely by reason of its having paid the compensation.

2. Because of the policy provision giving subrogation.

3. Under the Texas Workmen's Compensation Law, which is in effect a part of the policy because of the policy provisions.

The policy of insurance issued the Bar X Ranch and David C. Bintliff covers numerous risks in Texas, Louisiana and California. We will not notice each state. It covers employees who come under the Texas Workmen's Compensation Law. It indemnifies the insured against liability for damages for bodily injury suffered by employees. These two coverages (A and B) are set up in the regularly printed form of the policy plus the material endorsements showing them applicable. The printed form of the policy in paragraph 12 provides as follows:

"In the event of any payment under this policy, the Company shall be subrogated to all rights of recovery therefor of the Insured and any person entitled to the benefits of this policy against any person or organization, and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after loss to prejudice such rights."

Voluntary compensation is provided for by endorsement Coverage C. It provides for compensation to employees not covered by the workmen's compensation law if they are injured under such circumstances that they would be entitled to compensation under the law if it were applicable to them. The amount of compensation and benefits are the same as would have been payable under law had it been applicable. Then follows this provision as a part of Coverage C:

"The benefits payable under Coverage C on account of such injury shall be paid to such person or persons as would have been entitled thereto under the designated workmen's compensa-

tion law, provided, however, that as a condition precedent to any such payment the injured employee, or in the event of his incapacity, his legal representative, or, in the event of his death, his legal representative or the person or persons entitled to sue therefor, shall (1) execute such full and binding release of all claims against the Insured and the Company on account of such injury or death as may be required by the Company, and (2) assign to the Company all claims or judgments or the proceeds thereof which he or they may have or recover against any person who or organization which is or may be liable on account of such injury or death and execute such other documents as the Company may require to enable it to enforce such rights or collect such proceeds. The Company shall have full power to enforce such rights under any such assignment in its own name or in the name of the injured employee or to make such negotiations and settlement as may be deemed expedient by the Company, but the Company shall not be obligated to enforce such rights. In the event of any recovery or settlement the Company shall pay the proceeds thereof, less payments hereunder and all expenses incident to such recovery or settlement, to the person or persons entitled thereto."

Paragraph 5 provides that if a person entitled to compensation under Coverage C refuses to accept such payment and comply "with the terms and conditions set forth above" or commences suit seeking damages, other than under Coverage C, then the insurer's liability under Coverage C terminates.

Paragraph 6 of Coverage C provides that as respects injuries to employees covered by voluntary compensation but who do not choose to accept it on the terms and conditions provided, then the insurer will indemnify the insured from obligation to pay damages for bodily injury to the extent of $100,000.

The record reflects that no demand was made by the appellant on appellees to assign any claim they might have against M & M Air Service, Inc., until during the trial of this case. None was ever given. The record is silent as to whether appellees were ever notified that if they accepted the voluntary compensation appellant would be subrogated to their rights against M & M to the extent of the compensation payments or that they would have to assign their rights to this extent. Nor does the record reflect that appellees were ever familiar with the policy, except as reflected by their filing the "friendly suit" by which they, under an agreed judgment, were awarded compensation.

Appellant cannot claim subrogation by reason of the Texas Workmen's Compensation Law because such law has no governing effect as to voluntary compensation. Voluntary workmen's compensation is purely a matter of contract and the rights and obligations of the parties are measured by the contract. The policy of insurance here involved, so far as it relates to the payment of voluntary compensation, merely makes the workmen's compensation law applicable to the extent that it measures the amount of compensation and other benefits payable and the employee would be entitled to compensation only if his injuries were such that he would be entitled to compensation under the workmen's compensation law had he been covered by it. We find nothing anywhere in said policy that makes all provisions of such Law applicable. The subrogation provision of such Law is not, therefore, applicable.

Neither is appellant entitled to subrogation in equity. Here the appellant under its policy assumed the primary obligation to pay the compensation and benefits prescribed by the workmen's compensation law if the employee was injured while in

the course and scope of his employment. It was not discharging another's obligation.

We think four cases in Texas construing the Workmen's Compensation Law before it contained a subrogation provision are here applicable.

In the case of Fox v. Dallas Hotel Company, 111 Tex. 461, 240 S.W. 517, the Supreme Court held that the hotel was not discharged from liability for its negligence because the injured employee, who had upon receiving compensation under the Act, released the employer and the compensation carrier from liability. While subrogation was not directly involved, we think the rationale of the decision is that compensation payable by the carrier is a primary contractual obligation assumed by it for the employer and the release of the carrier and the employer is not the release of a joint tort-feasor or an obligation in which the alleged joint tort-feasor had an interest. We say this particularly in the light of this language of the court:

"We think our construction effectuates the principal purpose of the 1913 act, which was to shield the employee, to a restricted extent, from the consequences of injuries received in the course of his employment, by insuring the payment of weekly indemnities for either the period of disability or a very limited time. The protection furnished by the act is closely analogous to that provided by accident insurance, where the insurance company is refused subrogation to the claim of the insured against a third person whose negligence occasions the injury for which compensation is collected of the company. Aetna Life Ins. Co. v. [J. B.] Parker & Co., 96 Tex. 287, 72 S.W. 168, 580 [30 Tex.Civ.App. 521], 621.

"A similar question to that under consideration was presented by the contention of a railway company that it could not be held liable for time lost by a passenger from injuries sustained in a wreck occasioned by the company's negligence, where, under a contract with the passenger's employer, or by grace of the employer, the passenger's regular wages were not discontinued. The contention was disposed of by the decision that—

"'If the continuance of his wages was a provision of his contract, or a grace of his employers, the defendant was not entitled to the benefit of either.' M. P. Ry. Co. v. Jarrard, 65 Tex. 566."

Then in its opinion the court noted that in the cases of City of Austin v. Johnson, 204 S.W. 1181, Southern Surety Co. v. Houston Lighting & Power Co., 203 S.W. 1115, and T. & P. R. Co. v. Archer, 203 S.W. 796, three Courts of Civil Appeals had held that the receipt of compensation under the Act did not deprive the employee of its rights of action against a third party or subrogate the carrier who had paid the compensation to the employee's claim against the third person. It also noted it had granted a writ of error in the first two cited cases.

In the week following the above decision the Commission of Appeals handed down decisions in those two cases. The opinion in each case is reported in 240 S.W. 523.

In the Southern Surety Co. v. Houston Lighting & Power Co. case the Commission of Appeals, on the authority of Fox v. Dallas Hotel Company case, held the insurance carrier was not entitled to subrogation. In City of Austin v. Johnson, the same Court, on a basis of the same case, held the injured employee did not give up his action against the third party based on negligence.

We think it of special significance that the Supreme Court in Fox v. Dallas Hotel Company, supra, cited with approval the case of Aetna Life Ins. Co. v. J. B. Parker & Co., 96 Tex. 287, 72 S.W. 168, and held the payment of workmen's compensation by the carrier under its contract was com-

parable to the payment of health and accident insurance by an insurer who is held not entitled to subrogation in the absence of a contract. In the Aetna case the insurer had, under its policy with the railroad for the benefit of its employees, paid health and accident benefits to one Shelvy, an employee of the railroad company. Shelvy had been injured working for the railroad and the insurer was obligated to pay him for the time lost. Shelvy had released the railroad from liability upon settling his claim against it. Shelvy then assigned his claim against Aetna as security for a debt to J. B. Parker & Co. Aetna defended because of the release of the railroad on the theory it had thus been deprived of its right of subrogation. The Supreme Court expressly approved the opinion of this Court, which is reported in 72 S.W. 621, and as an additional reason for holding there was no subrogation said:

"* * * so far as the right of subrogation is concerned, accident insurance is more analogous to life insurance than it is to either marine or fire insurance, and it has been held that it does not apply in case of life insurance. [citing authorities] We think also that the case of Bradburn v. Railway Company, L.R. 10 Exch. 1, has some bearing upon the question. The point there decided is that 'in an action for injuries caused by defendant's negligence a sum received by the plaintiff on an accidental insurance policy cannot be taken into account in reduction of damages.' "

In the Court of Civil Appeals' opinion which was approved by the Supreme Court, it is said:

"But where a person has received personal injuries, caused by the negligence of another, several elements enter into the estimate of damages besides the mere stipulated indemnity for loss of time contracted for in the accident policy, and the loss is by no means identical. In the one there may be included full compensation for mental and physical suffering, loss of time, diminished capacity to earn money, etc., and in some instances punitory damages; while the other is a stipulated sum for loss of time only, which may or may not be full indemnity even for that. The accident policy undertakes to indemnify the insured, whether his injuries are the result of negligence or not, while the person or corporation inflicting the injuries can be held liable only for negligence; and, since so many elements enter into the estimate of the loss in the case of one that do not enter into or *from* any part of the other, there is wanting that identity of damage or loss that would entitle the insurer to subrogation on payment of the claim against him."

Appellant for a valuable consideration assumed the primary obligation to pay employees of the assured who were injured while working in the course and scope of their employment whether the injury was the result of negligence or not. The amounts it agreed to pay are the same as those fixed by the Compensation Law. The obligation is contractual and is in nowise dependent on tort by the employer. It is a different obligation from that which the appellees have against the third party.

Appellant's right to subrogation, if any, must, therefore, rest in contract.

■ Under the terms of paragraph 12 of the printed form the policy seems to give subrogation upon any payment under the policy. However, it is the only provision in the printed form for subrogation and the printed form gives Coverage A (Workmen's Compensation to Employees Covered by Law) and Coverage B (for bodily injury or death to employees). Coverage B, in our view, when considering the policy as a whole, particularly paragraph 9 and Coverage C, refers to damages the employee suffers that are not satisfied by payment of voluntary compensation and is not applicable to the voluntary compensation payment. Voluntary compensation is provided by an

endorsement to the printed form and in it it provides not for automatic subrogation but that the persons receiving payment shall, as one of the conditions precedent to payment, assign such claims as he or she may have against a third person and execute such other documents as insured shall require. Too, it gives the insured the right to enforce its right under any such assignment. This is a special provision for subrogation. It contemplates that the beneficiary shall execute an assignment. It is true that the provision says one of the conditions precedent to payment shall be the execution of an assignment but this contemplates affirmative action by the beneficiary and not automatic transfer by reason of payment. There is a very good reason for such a provision contemplating the execution of an assignment instead of automatic subrogation. The beneficiary of a deceased employee who was not covered by the compensation law has a cause of action against an employer for negligence or he may receive voluntary compensation payments. He might hesitate to accept the compensation payments in lieu of a possible damage claim against his employer for negligence if he was thereby giving up his full rights against a third party. The provision, therefore, contemplates that the insurer may not want to insist on the assignment.

■ Appellant here insists that appellees having accepted the benefits of the contract must take the contract as they find it and this includes the conditions under which they were entitled to payment. This correctly states the general rule of law. Were the facts in this case merely that payment was made we would have to presume appellees accepted it under the conditions provided and appellant could require the execution of an assignment. However, in this case when payments were made the judgment of the court in the compensation case provided for one of the conditions of payments, that is, a full release of the carrier and the assureds. It also significantly provides that nothing contained in the judgment shall "release or

prejudice any right of Olga Quintero Valdez or the minor Plaintiffs in any right they might have against any third party responsible for the death of Modesto O. Valdez." The release contains substantially the same language. The trial court in its findings of fact found that no assignment was taken as a condition precedent to the payment of the compensation benefits. There is no finding concerning whether this reflects an intention not to take an assignment. We feel it may be inferred from the facts in the record that by not taking the assignment when the other condition precedent was carefully stated in the judgment and the release that appellant did not intend to rely on this condition precedent. There was no request for additional findings of fact. We will presume in support of the judgment a finding of such intent because it is referable to the finding that no assignment was taken.

■ We are further of the view that the effect of the trial court's finding of fact that the judgment and release contained the provision that nothing contained therein should "release or prejudice any right" of appellees in "any right" they might have against a third party together with his conclusion of law that appellant had no subrogation rights is a holding by the trial court that this was an express reservation by appellees of all of their rights against the third party which includes the full amount of damages recoverable. We feel such an interpretation is a permissible one.

It will be noted that in the part of Coverage C dealing with the right of appellant to an assignment it is provided in substance that under such assignment the insured shall have full power to enforce such rights in its name or the name of the beneficiaries and to negotiate such settlement as it deems expedient. Too, it gives the right in the event of recovery by the insurer to collect the proceeds and pay the proceeds to the persons entitled to them less payments under the policy and all expenses. In the absence of such a provision clearly these

rights and the right to full payment would be in Mrs. Valdez and the children. Yet the appellant agreed to a judgment and accepted a release that expressly provides that the release of appellant, Bintliff and Bar X shall not release or prejudice any right of Olga Quintero Valdez and the minors in any right they might have against a third party. This to us means the appellant is recognizing that all rights with regard to the beneficiaries' cause of action remained in them unimpaired by the compensation payments.

Affirmed.