**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-41302

_____

BECKY FERRELL,
Individually and as Next Friend for
Samuel Ryann Ferrell,
Shawna Renee Ferrell,
and
Steven Rae Ferrell, Jr., Minors;
and as Representative of the Estate of
Steven Rae Ferrell, Deceased; et al.,

Plaintiffs,

CLARENDON AMERICA INSURANCE COMPANY,

Intervenor
Plaintiff-Appellee,

VERSUS

THE CHARLES MACHINE WORKS INCORPORATED,
d/b/a DITCH WITCH,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

No. 97-41354

BECKY FERRELL,
Individually and as Next Friend for
Samuel Ryann Ferrell,
Shawna Renee Ferrell,
and
Steven Rae Ferrell, Jr., Minors;
and as Representative of the Estate of
Steven Rae Ferrell, Deceased; et al.,

Plaintiffs,

CLARENDON AMERICA INSURANCE COMPANY,

Intervenor
Plaintiff-Appellant,

VERSUS

THE CHARLES MACHINE WORKS INCORPORATED,
d/b/a DITCH WITCH,

Defendant-Appellee.

Appeals from the United States District Court
for the Eastern District of Texas
(2:96-CV-132)

August 13, 1998

Before JOLLY, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

In this consolidated appeal, we review a summary judgment in
favor of Clarendon America Insurance Company ("Clarendon") on its

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

subrogation claim and a subsequent order denying its motion for attorney's fees. We affirm the summary judgment and reverse and remand the order denying fees.

## I.

Steven Ferrell was killed by a defective Ditch Witch boring machine while installing underground cables for his employer, Utilities Installation of America ("UIA"), which paid his surviving spouse and children $250,000 for Ferrell's accidental death pursuant to the company's employee benefits package. Acceptance of the benefit also entailed an agreement with UIA that if the Ferrells collected from a third-party tortfeasor for the wrongful death, UIA would have a claim of subrogation against the Ferrells for the first $250,000 of the proceeds.

Clarendon reimbursed UIA for the $250,000 paid to the Ferrells under the employee benefits package. UIA's policy with Clarendon provided that in an accidental employment-related death, Clarendon would pay UIA up to $250,000 for any death benefits that UIA paid under the plan. Clarendon was subrogated to any recovery UIA received as a result of the Ferrells' third-party recovery.

## II.

After receiving the death benefits, the Ferrells sued UIA and Ditch Witch in state court for the wrongful death. Clarendon intervened in an attempt to recoup, from the Ferrells, the $250,000 it had previously paid to UIA. UIA then settled with the

3

plaintiffs, paying them another $240,000. Thereafter, the plaintiffs nonsuited their state court claims against Ditch Witch and refiled this diversity action in federal court.

There, the Ferrells, Ditch Witch, and Clarendon (again as intervenor-plaintiff) reached a "Stipulation Agreement" in connection with the Ferrells' settlement of their case against Ditch Witch. The Stipulation Agreement provides that (1) Ditch Witch will indemnify and hold harmless the Ferrells against Clarendon's subrogation claims on the $250,000 original payment from the UIA employee benefits plan; (2) Clarendon drops any claim against the Ferrells for subrogation from their second settlement with UIA (the $240,000 payment for which Clarendon also reimbursed UIA under its insurance policy); (3) Clarendon retains its rights to sue Ditch Witch (a right acquired from UIA when it tendered them payment of the $250,000)[1] to enforce the Ferrells' duty to subrogate up to the amount of the original $250,000 payment from the UIA employee benefits plan; and (4) Clarendon allows Ditch Witch to assert all of its own rights and defenses as well as all of the Ferrells' in the instant subrogation litigation.

The Ferrells having dropped out of the suit, both the insurer and Ditch Witch moved for summary judgment. Ditch Witch claimed that Clarendon could not sue for subrogation because (1) the

---

[1] Section 13 of Clarendon's policy insuring UIA provides:

SUBROGATION

If payment is made under this Policy, Company shall be subrogated to all rights of recovery therefore of the Insured and any persons entitled to the benefits of the Policy, against any person or organization . . . .

4

subrogation right really belonged to UIA, not Clarendon, and UIA had chosen to waive its right; (2) Clarendon and UIA violated the Texas Insurance Code and thus could not seek subrogation; and (3) the Texas Labor Code forbade Clarendon's claim for subrogation.

The district court scheduled a hearing on the motions, but at the last moment Ditch Witch proffered new information, and the court *sua sponte* referred the matter to a magistrate judge for a report and recommendation. The magistrate judge did not hold a hearing but recommended that summary judgment be denied to Ditch Witch and granted to Clarendon.

The magistrate judge reasoned that, by the terms of the contract, the Ferrells had agreed to subrogate their third-party recovery to UIA; UIA had agreed to subrogate its recovery from the Ferrells to Clarendon; and Ditch Witch had agreed to assume all of the Ferrells' subrogation obligations to UIA. Concluding that Clarendon and UIA did not waive any subrogation rights against the Ferrells, the magistrate judge found it appropriate that judgment should be entered against Ditch Witch for $250,000.

Although Clarendon had also raised equitable subrogation and ERISA preemption as bases for its recovery, in addition to its claim of contractual subrogation, the magistrate judge found the contractual issue dispositive and therefore failed to address any of Clarendon's other arguments. The magistrate judge also failed to address Ditch Witch's arguments that this subrogation claim was barred by the Texas Labor and Insurance Codes.

Ditch Witch objected to the district court; Clarendon did not

5

object to the report and recommendation. The district court, conducting a *de novo* review, affirmed the magistrate judge's factual findings and conclusions of law. Ditch Witch now appeals in No. 97-41302 (referred to below as "Ditch Witch's appeal").

Clarendon, after winning summary judgment on its subrogation claim, moved for attorney's fees under state law and ERISA. The district court referred the matter to the magistrate judge, who recommended the motion be denied. Clarendon objected to the district court, which denied the motion. The appeal in No. 97-41354 followed (referred to below as "Clarendon's appeal").

## III.

We review summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin by consulting the applicable substantive law to

determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

## IV.

Ditch Witch argues that Clarendon has waived its right to argue equitable subrogation and ERISA preemption, contending that although the insurer argued these points to the magistrate judge, it failed to object to the district court when the magistrate judge failed to address these arguments in his report and recommendation. "[A] party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

Ditch Witch's argument rests on the premise that the magistrate judge's failure to address these points constituted an adverse ruling to Clarendon on these issues. Logically, however, that assumption is problematic. More likely, the magistrate judge

7

found the contractual subrogation issue dispositive and had no need to address alternate theories of recovery. Thus, assuming *arguendo* that a prevailing party fits into the *Douglass* rule, we do not find the magistrate judge's failure to address something constitutes an adverse "conclusion of law" where, as here, resolution of that issue was not necessary to the reasoning supporting the recommendation and report. A contrary holding would risk, as Clarendon puts it, mandating "any prevailing party . . . to appeal omitted references of their arguments that were raised but not expressly written in a magistrate's report."

V.

The crux of Ditch Witch's appeal is its contention that Clarendon, through UIA, does not have a contractual right of subrogation against the Ferrells because UIA failed to demand in writing the Ferrells' agreement to subrogate; it argues that UIASSand thereby Clarendon standing in UIA's shoesSScannot now assert subrogation rights against Ditch Witch, which is standing in the Ferrells' shoes. Ditch Witch's argument turns on the terms of the employee benefits plan agreement between UIA and the Ferrells, and on *United States Fidelity & Guar. Co. v. Valdez*, 390 S.W.2d 485 (Tex. Civ. App.SSHouston [1st Dist.] 1965, writ ref'd n.r.e.) (hereinafter "*USF&G*").

The employee benefits plan that UIA offered its employees provided, in relevant part:

> (a) To receive any Plan benefits . . . the Participant or the Participant's legal representative (or in the case of

8

the Participant's death, the Participant's estate) must agree in writing:

(i) that the Participant's Employer (as the sole source for payment of benefits under the Plan) will be subrogated to any recovery (irrespective of whether there is any recovery from the third party of the full amount of all claims against the third party) or right of recovery against that third party . . . .

(b) The Participant's Employer will be subrogated to the extent of Plan benefits paid because of the Injury, Occupational Disease, or Cumulative Trauma.

(c) Subrogation rights of the Participant's Employer under this Section 5.4 will not be jeopardized merely because the Participant's Employer fails to recognize or claim its right of subrogation until after paying Plan benefits, or if the Participant's Employer recognizes or claims its right of subrogation, but fails to obtain the written agreement provided at 5.4(a) above, before paying Plan benefits. Any Plan benefits paid to the Participant, his legal representative, or his estate must be returned to the Employer immediately if the Employer requests the recipient execute, deliver, and fully comply with the written agreement provided at 5.4(a) above, and the recipient of such Plan benefits fails or refuses to execute, deliver, or comply fully with such agreement.

(d) The Participant, by participation in this Plan, agrees that his or her estate, and the legal representative of such estate, shall be obligated to agree that the Participant's Employer will be subrogated to any recovery or right of recovery the estate has against any third party with respect to the Injury, Occupational Disease or Cumulative Trauma or with respect to any wrongful death claim or action.

Ditch Witch's argument against contractual enforcement of the subrogation right against the Ferrells concentrates on the fact that UIA never requested or required the Ferrells to execute a written assignment agreement to subrogate under § 5.4(a) of the employee benefits plan. Ditch Witch maintains that UIA's failure to obtain a written subrogation agreement either before payment, or

9

after, constitutes a waiver of its rights to subrogation under the terms of the plan.

To buttress its point, Ditch Witch points to *USF&G*, in which the court found waiver of a plan beneficiary's obligation to repay the employer for amounts recovered from a third party for the deceased's wrongful death. In *USF&G*, the court was faced with a similar, unexecuted written release provision in the employee benefits plan. The court noted:

> [There] is a special provision for subrogation. It contemplates that the beneficiary shall execute an assignment. It is true that the provision says one of the conditions precedent to payment shall be the execution of an assignment but this contemplates affirmative action by the beneficiary and not automatic transfer by reason of payment. There is a very good reason for such a provision contemplating the execution of an assignment instead of automatic subrogation. The beneficiary of a deceased employee who was not covered by the compensation law has a cause of action against an employer for negligence or he may receive voluntary compensation payments. He might hesitate to accept the compensation payments in lieu of a possible damage claim against his employer for negligence if he was thereby giving up his full rights against a third party. The provision, therefore, contemplates that the insurer may not want to insist on the assignment.

*USF&G*, 390 S.W.2d at 492. From these observations, Ditch Witch urges us to conclude that unless the beneficiary executes a written assignment agreement, we must find that the payor waives its subrogation rights.

This conclusion, however, did not necessarily follow for the policy at issue in *USF&G*, nor does it for this case. As in the instant employee benefits plan, the policy in *USF&G* provided that acceptance of the payor's subrogation rights would be a condition

10

precedent to payment to the insured.  Here, the employee benefits plan provides in § 5.4(d) that "by participation in this Plan, [the Participant] agrees that his or her estate, and the legal representative of such estate, shall be obligated to agree that the Participant's Employer will be subrogated to any recovery or right of recovery the estate has against any third party with respect to the Injury . . . ."

> Given such a clause, the *USF&G* court found:

> Appellant [USF&G] here insists that appellees [the beneficiaries] having accepted the benefits of the contract must take the contract as they find it and this includes the conditions under which they were entitled to payment.  This correctly states the general rule of law. *Were the facts in this case merely that payment was made we would have to presume appellees accepted it under the conditions provided and appellant could require the execution of an assignment.*

*USF&G*, 390 S.W.2d at 492 (emphasis added).  The court, however, found that USF&G had done more than just fail to obtain a written assignment; it had also voluntarily waived that right in a judicial proceeding.

In *USF&G*, the beneficiaries did not claim the payment outright from the employer.  Instead, they filed a "friendly suit" in state court in which the employer agreed to pay the death benefit.  The judgment also provided, however, that nothing contained therein would "release or prejudice any right [that the beneficiaries] might have against any third party responsible for the death of [the deceased]."  *Id.* (quoting the judicial settlement).

The *USF&G* court read this as a release of the employer's rights under the employee benefits plan to obtain an assignment:

11

"We feel it may be inferred from the facts in the record that by not taking the assignment when the other condition precedent was carefully stated in the judgment and the release that appellant did not intend to rely on this condition precedent. . . . [T]his was an express reservation by appellees of all of their rights against the third party which includes the full amount of damages recoverable." *Id.*

Although UIA did not enforce the written request as a condition precedent to payment, its waiver of its assignment rights cannot be assumed. First, UIA has the right, under the employee benefits plan, to insist on assignment either before or after payment; the employee's participation in the plan is his contractual acceptance of the employer's assignment rights.

Second, there is no comparable express waiver of UIA's subrogation rights in a settlement document, judicial or otherwise. The key fact that the *USF&G* court appeared to rely on was the employer's decision to enter into a settlement agreement with the aforementioned waiver language. Although the *USF&G* court was sympathetic to the beneficiaries, the court had to acknowledge that the "general rule" is that the beneficiary "took the contract as he finds it" and that by accepting the money, they would otherwise have opened themselves up for a claim of subrogation. *See id.* Without the express waiver by UIA, under *USF&G*, Texas law holds the Ferrells to the employee benefits plan contract. *See id.* That is, when they agreed to take the $250,000, they also agreed, under § 5.4 of the plan, to assign any claims up to that amount to UIA.

Thus, under the convoluted assignments and reassignments of rights and duties, Ditch Witch is contractually liable to Clarendon for the Ferrells' receipt of the $250,000 from UIA.[2]

VI.

Ditch Witch argues that even if the Ferrells were contractually bound to assign their third-party recovery to UIA, the assignment was prohibited by the Texas Insurance Code. Specifically, Ditch Witch contends that because this insurance coverage is triggered by the participant's death, it is life insurance. *See* TEX. INS. CODE ANN. art. 3.01 § 1. Therefore, according to Ditch Witch, all of the state regulatory hurdles for selling life insurance must be met by the "seller"SSUIA. Otherwise, Ditch Witch argues, the life insurance seller is, or should be, estopped from asserting any of its rights under the illegal life insurance contract against the insured/beneficiary. *See* TEX. INS. CODE ANN. art. 3.42(a); *Mutual Life Ins. Co. v. Daddy$ Money, Inc.*, 646 S.W.2d 255, 257 (Tex. App.SSDallas 1982, writ ref'd n.r.e.).

Ditch Witch's argument relies on an incorrect premise: Even

_____

[2] Ditch Witch also argues that, to the extent the Ferrells did contractually assign their wrongful death claim, they were precluded from doing so under Texas law absent a statutory grant of authority to do so. *See, e.g.*, *Carter v. Van Meter*, 495 S.W.2d 583 (Tex. Civ. App.SSDallas 1973, writ dismissed). Ditch Witch raised this argument before the magistrate judge, who, although failing to address it, ruled against Ditch Witch. The magistrate judge therefore necessarily rejected it, and Ditch Witch was obliged to raise this objection to the district court under *Douglass*. Its failure to do so means that only plain error review applies. *See Douglass*, 79 F.3d at 1428-29. Under this standard of review, Ditch Witch has demonstrated no "manifest injustice" or threat to the "integrity of the judicial process" necessary to justify reversal, even if, *arguendo*, the district court erred on this point of Texas law.

though this insurance benefit is triggered by the participant's death, and thus at first glance falls within the Insurance Code's definition of "life insurance," Texas courts have found that death benefits awarded as part of an occupational injury plan are not "life insurance" under art. 3.01 § 1. *See, e.g.*, *Ayre v. Brown & Root, Inc.*, 678 S.W.2d 564, 565 (Tex. App.SSHouston [14th Dist.] 1984, writ ref'd n.r.e.).[3] Instead, they are more properly thought of as "accident insurance" under TEX. INS. CODE ANN. art. 3.01 § 2. *See id.*

If this benefit is not "life insurance," art. 3.42 and its regulatory hurdles do not apply. Because the state has not, and, in our view, would not invoke its art. 3.42 regulatory, police powers over this "life insurance" contract in the first instance, any argument that we should "supplement" those powers, by finding this contract a nullity, is without force.

## VII.

Ditch Witch avers that the state workers' compensation laws prevent Clarendon's recovery. Specifically,

(a) A contract entered into to indemnify an employer from

---

[3] The court added:

Although Appellant is correct in stating that the definition of a life insurance company, found in art. 3.01 § 1, could reasonably include payments for cessation of life by accidental death, TEX. INS. CODE ANN. art. 3.01 § 2 (Vernon 1981), precludes us from so holding. Section 2 defines an "accident insurance company" as a corporation which pays money in the event of death resulting from traveling or general accidents. A maxim of statutory construction is that a specific provision governs a general provision.

*Id.*

14

loss or damage resulting from an injury sustained by an employee that is compensable under this subtitle is void unless the contract also covers liability for payment of compensation under this subtitle.

(b) This section does not prohibit an employer who is not required to have workers' compensation insurance coverage and who has elected not to obtain workers' compensation insurance coverage from obtaining insurance coverage on the employer's employees if the insurance is not represented to any person as providing workers' compensation insurance coverage authorized under this subtitle.

TEX. LABOR CODE ANN. § 406.052. Ditch Witch's argument is bipartite. First, it asserts that Clarendon's policy "is void" under subsection (a) because it does not provide for compensation to UIA's employees under the workers' compensation laws. Second, Ditch Witch maintains that subsection (b) precludes Clarendon and UIA from enforcing their rights because the insurance policy provided by Clarendon insures UIA, not UIA's employees directly.

Subsection (a) is not applicable, as no one contends that UIA *must* provide workers' compensation insurance. By its terms, subsection (a) applies only to those injuries that are "compensable under this subtitle" of the Texas Labor Code. As Ditch Witch acknowledges, UIA has the option, under Texas labor law, to forego the workers' compensation scheme entirely and subject itself to the full extent of the common law liabilitySSabsent any common law defenses. *See* TEX. LABOR CODE ANN. §§ 406.002, 406.033. UIA chose to exercise this option. Accordingly, injuries occurring in the scope of its employees' employment are not "compensable under" the state workers' compensation laws.

15

The relevant issue thus becomes whether UIA comported with the requirements of subsection (b). Ditch Witch argues that because Clarendon's policy covered only UIA and not UIA's employees directly, subsection (b) bars Clarendon's insurance coverage of UIA. Subsection (b), however, cannot be read for all that Ditch Witch suggests.

The statute "does not prohibit" non-workers' compensation subscribing employers from obtaining "insurance on the employer's employees" if the employer provides adequate notice and representations to the employee that this insurance *is not* workers' compensation. The crux of Ditch Witch's argument is its reading of subsection (b) as an exclusive exception to subsection (a). That reading is incorrect.

The structure of the law is more properly understood thus: Subsection (a) provides that if an employer obtains workers' compensation insurance (and thereby receives the statutory protection from employee suit), it must cover all that the workers' compensation laws say it must cover. Lurking in the background of subsection (a) is the fact that Texas does not require employers to have workers' compensation insurance. *See* TEX. LABOR CODE ANN. § 406.002.

Subsection (b) prevents employers from getting the benefits of the workers' compensation laws without paying their full price. For instance, in the absence of subsection (b), an employer might opt out of the workers' compensation scheme but still offer its employees some type of private insurance coverage for on-the-job

16

accidents.

Let us assume that this insurance does not cover the statutory requirements of workers' compensation. Let us also assume that the employer tells its employees that it is offering private "workers' compensation." An unknowing, injured employee might take the private insurance benefit and think that he is thereby precluded from also bringing suit against the employer by the workers' compensation laws. The employer has no incentive to dispel the employee's misperception and may even wish to foster it through affirmative misrepresentations.

Subsection (b) is a statutory protection of these workers. It allows employers the right to provide their own insurance, if it is not *represented* as workers' compensation insurance. As a result, there is less likelihood that an injured employee will wrongly conclude that acceptance of the benefit also precludes his own independent tort action against the employer. That said, subsection (b) says nothing about an employer's decision to offer its own benefits to employeesSSbenefits *not* represented to employees as workers' compensation insuranceSSand then to have *itself* insured on having to pay those benefits, as is the case here. In such a circumstance, there is no need to protect unknowing employees, and thus subsection (b) does not apply.

## VIII.

Ditch Witch maintains that the magistrate judge erred in ruling on the motions for summary judgment without a hearing and

17

with no notice that a hearing would not be held after the district court referred the matter to the magistrate judge.

> Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling. . . .  Rule 56(c) requires neither an oral hearing nor advance notice of a 'date certain' on which a motion for summary judgment is to be decided; instead 'if there is not a hearing, the adverse party must have at least ten days to respond to the motion for summary judgment.' *Daniels v. Morris*, 746 F.2d 271, 274-75 (5th Cir. 1984).

*Jackson v. Widnall*, 99 F.3d 710, 713 (5th Cir. 1996).[4]

Ditch Witch makes no claim that it was prejudiced by a lack of notice; it merely asserts that there was lack of notice.  Its arguments are unavailing.

First, an *oral* hearing is not required.  *See id.*  Second, Ditch Witch had more than ten days to offer a rebuttal to the motion for summary judgment before the magistrate judge ruled on the motion.  Indeed, in considering the cross-motions for summary judgment, the district court granted an additional ten days at the originally scheduled hearing of July 7, 1997, for Clarendon to respond to a last-minute filing submitted by Ditch Witch.  Ditch Witch could easily have used that time to respond to Clarendon

---

[4] *Jackson* and *Daniels*, moreover, do not conflict with *Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387, 392 (5th Cir. 1980), cited by Ditch Witch.  *Capital Films*, too, is concerned with giving the non-movant adequate notice by making sure it has at least ten days to respond to the motion for summary judgment.  The later cases offer a more articulate standard of the one introduced in *Capital Films*.

Also, the facts of *Capital Films* were egregious.  The defendant filed a motion for summary judgment.  The court acted as if it were proceeding to trial.  The day before voir dire (a year after the motion was filed), it entered summary judgment, apparently not giving the plaintiff a chance to offer additional material in support of its contention, developed during the interim year, that a genuine issue of material fact existed.  Ditch Witch offers no similar showing of reliance on the alleged lack of notice.

18

before the magistrate judge issued his recommendation.  We therefore uphold the summary judgment in Ditch Witch's appeal.


IX.

Clarendon cross-appeals, claiming attorney's fees under both Texas state law and ERISA.  We address the latter issue first.


A.

Clarendon's claim for attorney's fees under ERISA is easily dismissed.  An award of attorney's fees for cases "brought under" ERISA is within the discretion of the district court.  *See* 29 U.S.C. § 1132(g)(1).[5]

As far as we can tell from the briefs and the arguments, this case has little to no nexus with ERISA; the "brought under" requirement of § 1132(g)(1) is not met.  The crux of the dispute between Clarendon and Ditch Witch concerns state contract and insurance subrogation law.  ERISA supposedly arises only as an affirmative defense, and it really does not even appear in that regard.

The insurer's reliance on ERISA is ironic because, aside from arguing that it did not waive the issue in the district court, the issue appears nowhere in its brief in the related appeal on the

---

[5] Clarendon points to a multi-factored test that the district court should, or must, consider in determining whether to award attorney's fees under ERISA. It claims that it was error for the district court not to discuss these considerations in this case.  We disagree.  Clarendon cannot pass the threshold showing that this is an ERISA case.  Therefore, any further inquiry into what ERISA requires the district court to consider in its award of attorney's fees is necessarily unjustified.

19

merits.  Accordingly, the district court was well within its discretion in denying an award of attorney's fees under ERISA.

B.

The more difficult issue is whether the court erred in concluding that Clarendon could not recover attorney's fees under state law.  We conclude that it did so err.

Under TEX. CIVIL PRAC. & REM. CODE ANN. § 38.001(8), "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract."  "The award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract preceded by proper presentment of the claim is mandatory" under § 38.001(8). *In re Smith*, 966 F.2d 973, 978 (5th Cir. 1992).[6]

> "The requisites to recover for attorney's fees under [§ 38.001(8)] . . . are: 1) recovery of a valid claim in a suit on an oral or written contract; 2) representation by an attorney; 3) presentment of the claim to the opposing party or a representative of the opposing party; and 4) failure of the opposing party to tender payment of the just amount owed before the expiration of thirty days of presentment." *Sikes v. Zuloaga*, 830 S.W.2d 752, 753 & n.1 (Tex. App.SSAustin 1992, no writ).  The party seeking attorney's fees must both "plead and prove that presentment of a contract claim was made to the opposing party and that the party failed to tender performance." *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983).

*Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc.*, 117 F.3d

---

[6] "[R]ecovery on a valid claim founded on a written or oral contract" includes maintaining the award on appeal. *See Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 236 (Tex. App.SSHouston [14th Dist.] 1996, writ denied).  Our affirmance in the consolidated appeal in No. 97-41302 satisfies this requirement.

20

180, 196 (5th Cir. 1997).

In its briefs, Ditch Witch does not contend that Clarendon has failed to meet any of these requirements.[7]  Rather, it argues that there is no contractual right or duty between Ditch Witch and Clarendon.  Essentially, it contends that this case really concerns Clarendon's "tort" claim against Ditch Witch, not a "contract" claim.

We disagree.  At bottom, this suit§§as Ditch Witch freely acknowledges in the related appeal on the merits§§is a claim by UIA against the Ferrells for reimbursement given their recovery from Ditch Witch.  There certainly is a contract between UIA and the Ferrells in this regard§§§ 5.4 of the employee benefits plan.

The idea that Clarendon is suing Ditch Witch for its tort also conflicts with the record:  Clarendon's complaint in intervention sues "all the plaintiffs" for subrogation on their recovery.  Therefore, UIA, via Clarendon, is suing the Ferrells, via Ditch Witch, on the Ferrells' broken contractual promise under the UIA employee benefits package made in consideration for their receipt of the $250,000 payment.

Accordingly, under Texas law, Clarendon has recovered on a "claim [that] is for . . . an oral or written contract."  TEX. CIV.

---

[7] Ditch Witch does not argue that any of these requirements is unmet, and our review of the record additionally satisfies us that all were.  Although our review of the record convinces us that Clarendon made a sufficient presentment of its contract claim to the Ferrells and to Ditch Witch, Clarendon failed to "plead" presentment in its motion for attorney's fees.  Under Texas law, Ditch Witch has waived any rights it may have in that regard, however, by failing to object to the district court, or to raise it on appeal. *See, e.g.*, *Mendleski v. Silvertooth*, 798 S.W.2d 30, 32 (Tex. App.§§Corpus Christi 1990, no writ) ("[F]ailure to properly plead presentment would be waived absent a special exception . . . .").

PRAC. & REM. CODE ANN. § 38.001(8).  Once the aforementioned requirements are met, the award of attorney's fees becomes "mandatory."  *See Smith*, 966 F.2d at 978.  Without a choice, we therefore reverse, in Clarendon's appeal, and remand for determination of "reasonable" attorney's fees.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.003.

The judgment in No. 97-41302 is AFFIRMED; the judgment in No. 97-41352 is REVERSED and REMANDED.