**CHEVRON U.S.A. INC., Appellant,**

v.

**Carlos LARA, Appellee.**

**No. 08–89–00215–CV.**

Court of Appeals of Texas, El Paso.

Feb. 21, 1990.

Rehearing Overruled March 21, 1990.

Rick G. Strange, Cotton, Bledsoe, Tighe & Dawson, Midland, for appellant.

Jeff Spain, Bill G. Alexander, Law Offices of Bill Alexander, P.C., Odessa, Dick R. Holland, Boldrick & Clifton, Midland, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment based upon a jury verdict in a premises liability case. The jury found the lessor guilty of negligence in maintaining a dangerous condition and in failing to inspect for latent defects in a pump jack. We affirm in part and reverse and render in part.

In March 1986, Chevron called upon Water Flood Maintenance, which set and repaired pumping units, to repair or replace the tail bearing on a Rig Master 640 pumping unit. This company had originally installed this unit. Mr. Lara was a member of the crew which went to the well location for the purpose of removing the bearing which was making a "popping noise." The crew removed the horse's head from the pump jack and Mr. Lara was releasing the brake so as to let the crank turn when two bolts broke and the equalizer bar and two pitman arms fell from the beam and hit the Appellant. He was hit in the head and shoulder and the two other members of the crew took him to the hospital in Odessa. He was seen in the emergency room and

released. He has had two surgeries on his right shoulder for repair of a rotator cuff tear. He has attempted to return to work on several occasions and has not been able to do the work.

The accident occurred at the time Mr. Lara released the brake so as to permit the crank to turn and let the counter-balance weights down, thereby lowering the equalizer bar. Apparently, the shift in weight caused the bolts which attached the equalizer bar to the beam to break off and the bar and pitman arms fell off and hit Mr. Lara. The bolts were installed when the unit was made. The unit was manufactured according to standards of the American Petroleum Institute. There was never any inspection of these bolts after the unit was installed. The only way to inspect the bolts would be to climb up on the beam and that would be dangerous according to all the evidence. Mr. Art Bevins, President of Water Flood Maintenance, said his company had installed well over a thousand pumping units since 1982. He testified that one of the bolts sheared off and the other one was ripped off. He also said everybody thought this pumping unit was safe, but evidently it was not safe because it broke. There was no testimony that the particular bolts used were defective, but Mr. Bevins testified, "We felt like the bolts might be too small. I'm not an engineer, but they just looked like they might be the problem that caused it. We put in one inch bolts and heavier straps." Two Chevron employees testified in this case. Les Breen, a safety specialist, said, "All pumping units are dangerous ..." and Buddy Seilhant, the field foreman, said he considered pumping units to be "real dangerous" to work on. Neither specified what they considered the danger to be.

The jury found that (1) Chevron's lease contained a dangerous condition, (2) Chevron knew, or should have known of the dangerous condition, (3) Chevron negligently failed to warn Lara of the dangerous condition, (4) the dangerous condition was the proximate cause of Lara's damages, (5) Chevron failed to exercise ordinary care in inspecting the premises to discover any latent defects, (6) Chevron's failure to inspect the premises was a proximate cause of the injuries sustained by Lara; and (7) damages in the sum of $161,600.00.

 Chevron initially contends that it had no duty to Lara and further that it was entitled to a judgment non obstante veredicto because there is no evidence that its lease contained a dangerous condition. It also contends there is no evidence that it knew or should have known of the dangerous condition and no evidence of its failure to warn of a dangerous condition. An owner or occupier of land has a duty to use reasonable care to keep the premises under its control in a safe condition. *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950). This duty to keep the premises in safe condition may subject the owner or lessor to liability for negligence in two situations: (1) those arising from a premises defect; and (2) those arising from an activity or instrumentality. *Redinger v. Living, Inc.*, 689 S.W.2d 415 (Tex.1985). In those cases involving an activity where the activity is conducted by and is under the control of an independent contractor, the duty with regard to any danger is on the contractor and not the owner. *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976). Of course, if the owner or occupier retains control over the work being performed, then a duty will arise with regard to the exercise of that control. *Bryant v. Gulf Oil Corporation*, 694 S.W.2d 443 (Tex.App.—Amarillo 1985, writ ref'd n.r.e.). In that event, the occupier of the premises must exercise reasonable care for the safety of the employees of the independent contractor who are invitees upon the premises. *Redinger v. Living, Inc.; Bryant v. Gulf Oil Corporation.*

 In this case there is no contention that Chevron was exercising any control over the work being performed. Chevron had no employee on the well site at the time of the accident. Mr. Bevins testified that normally there is no supervision and that he knows more about pumping units than Chevron. The difficulty in this case is that the accident occurred as a result of the

work being performed by the employees of an independent contractor and while such work was being performed there occurred an equipment failure. But, the exact cause of the equipment failure was not ever established. Mr. Bevins felt like the bolts might be too small. Obviously that looked to him like the thing that caused the accident because that was where the failure occurred. But, the happening of an accident is no proof of negligence. *Wells v. Texas Pac. Coal & Oil Co.*, 140 Tex. 2, 164 S.W.2d 660 (1942); *El Paso Natural Gas Company v. Harris*, 436 S.W.2d 408 (Tex. Civ.App.—El Paso 1968, writ ref'd n.r.e.). Both Chevron employees said pumping units were dangerous, but they did not specify what the danger was. It could have been because of the moving parts in an open area, it could have been from the shifting of weight after the horse's head was removed and the brake was released or it could have been because the bolts on the equalizer bar were too small.

■ *Moore v. Texas Company*, 299 S.W.2d 401 (Tex.Civ.App.—El Paso 1956, writ ref'd n.r.e.), involved a pump jack accident, but no equipment failure. In *Abalos v. Oil Development Company of Texas*, 544 S.W.2d 627 (Tex.1976), an independent contractor was employed to install a larger pumping unit, and the Court said, "No dangerous conditions existed on defendant's premises when Ruthco and its crew, including Abalos, came upon them to do their work." This case was tried with the testimony of two Chevron employees telling the jury of a dangerous condition upon the company's premises. Mr. Lara said he was given no warning about the bolts which failed. The issue as submitted to the jury only inquired generally as to a dangerous condition, a condition which both Chevron employees admitted existed, and it was not limited to defective or undersized bolts. We conclude that Chevron did owe a duty to the employees of its independent contractor concerning premises defects about which no warning was given and that there is some evidence to support the jury findings of a dangerous condition about which no warning was given. Points of Error

Nos. One, Two, Four and Seven are overruled.

■ We next consider those points of error which assert that there is factually insufficient evidence to support the jury findings that the lease contained a dangerous condition, that Chevron knew or should have known of the dangerous condition and that it negligently failed to warn of such condition. In passing on these points we consider all the evidence. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex. 1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). We conclude that there is sufficient evidence to support the jury findings. To reach a different result would require that we totally disregard the testimony of both of the Chevron employees. Points of Error Nos. Three, Six and Eight are overruled.

■ We now turn the second theory of liability submitted to the jury and that is negligence in failing to inspect the premises for a latent defect. Mr. Bevins testified these bolts were installed at the factory. He said there was no reason for Mr. Lara to check the bolts because he could not see them. He also said a pumper would not be expected to crawl upon the beam and inspect them because that would be too dangerous. It was his belief that nobody would have had any idea to inspect the tail bearing assembly. If a visual inspection had been made after the Water Flood Maintenance initial installation, such would only reveal the head of the bolt and not necessarily disclose any defect. We conclude that there is no evidence of a negligent failure to inspect for a latent defect and any evidence in that regard is factually insufficient. We sustain Points of Error Nos. Nine, Ten Eleven and Twelve.

■ Chevron contends the trial court erred in admitting evidence that it had experienced prior problems with other Rig Master pumping units when those problems were unrelated to the pumping unit's tail assembly. Although there was an objection when the question was asked of Mr. Bevins, there was no objection when similar questions were asked of the two Chevron employees and the evidence came in

without objection. Any error was waived. *City of Houston v. Riggins,* 568 S.W.2d 188 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); *City of Houston v. McFadden,* 420 S.W.2d 811 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.). In any event, we conclude that if there was error it was harmless because Mr. Lara testified that he knew of no similar accidents, and Mr. Bevins told the jury any earlier problems with this pumping unit had been corrected and he also said he knew of no similar accidents. Tex.R.App.P. 81(b)(1). Point of Error No. Five is overruled.

■ By two points of error the Appellant contends there is no evidence and insufficient evidence to support the jury award of $10,000.00 for future medical treatment. To recover such expense it is necessary to show a reasonable probability that such expenses will be necessary in the future. *City of San Antonio v. Vela,* 762 S.W.2d 314 (Tex.App.—San Antonio 1988, writ denied); *Powell v. Underbrink,* 499 S.W.2d 206 (Tex.Civ.App.—San Antonio 1973, no writ). Dr. Garza, who did surgery on Mr. Lara's shoulder, said the patient would require more physical therapy and some medications, but he said his estimate of several thousands of dollars is "just conjecture." Dr. Driscoll said his future office visits would be around $25.00 to $35.00 each, but he did not state the total amount for such visits. That evidence does not support the jury findings and we sustain Points of Error Nos. Thirteen and Seventeen.

■ An attack is also made on the factual sufficiency of the evidence to support an award of $16,000.00 for past medical treatment. Mr. Lara testified that his medical expenses at the time of trial was $16,000.00. Both Dr. Garza and Dr. Driscoll testified that their treatment was reasonably necessary and that the amount of their fees were reasonable. Point of Error No. Sixteen is overruled.

■ By two points of error the Appellant contends there is no evidence and insufficient evidence to support the jury award of $120,000.00 for future loss of earning capacity. Mr. Lara was a fifty-year-old man making $8.50 an hour and working from forty to seventy hours a week when the accident occurred. He had been unable to perform the same type work following the accident and two shoulder surgeries. There was no evidence of any extended work record since his injury in 1986. Had he continued working until he was sixty-years-old, he would have earned in excess of what the jury awarded him. We concluded the evidence was sufficient to support the jury findings and Points of Error Nos. Fourteen and Fifteen are overruled.

■ The last point presents a complaint that the closing jury argument was so prejudicial as to be incurable and that it was reversible error. The argument, which we do not condone and which was clearly outside the record, concerned big defense lawyers who ride up to their offices on the twentieth floor and sit around and drink mint juleps and martinis and say this boy is not hurt. It is difficult to believe that a lawyer with a badly injured client will risk reversal of a good verdict with such an argument. In this case no objection was made. We believe that harm from such erroneous argument could have been cured by a timely objection and an instruction to the jury to disregard it. *Gannett Outdoor Company of Texas v. Kubeczka,* 710 S.W.2d 79 (Tex.App.—Houston [14th Dist.] 1986, no writ). Point of Error No. Eighteen is overruled.

That part of the judgment awarding $10,000.00 for future medical treatment is reversed and judgment rendered denying all relief for future medical expenses and in all other respects the judgment of the trial court is affirmed.