**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-60331
Summary Calendar
_____


JOHNNIE HAWKINS,

Plaintiff-Appellant,

VERSUS

MICROFIBRES, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Mississippi
(1:94-CV-86)
_____


January 31, 1996
Before KING, SMITH, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Plaintiff Johnnie Hawkins appeals a summary judgment.[1]  In her
first claim, she alleges wrongful discharge under Mississippi law,
contending that defendant Microfibres discharged her because she

_____

[*]  Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

[1]  Hawkins also raises a contractual claim, which she refers to as
"estoppel."  We do not review this claim, as it is a new issue raised for the
first time on appeal.  *See Atlantic Mut. Ins. Co. v. Truck Ins. Exch.*, 797 F.2d
1288, 1293 (5th Cir. 1986).

reported to company officials an allegedly illegal act committed by her supervisor. In her second claim, she alleges employment discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (West 1995) ("ADA"), contending that Microfibres discharged her because it regarded her as disabled. We affirm the summary judgment as to the state law claim and reverse and remand as to the ADA claim.

I.

Microfibres, a North Carolina corporation, manufactures and distributes fabric for upholstered furniture. Hawkins, a citizen and resident of Mississippi, worked for Microfibres at their warehouse distribution facility in Tupelo, Mississippi. Although her job title was "office manager," her duties primarily consisted of data entry and general office duties. Microfibres actively employed Hawkins from about September 1987 to mid-January 1994, when Microfibres put her on an indefinite, unpaid leave of absence.

Hawkins's immediate supervisor, Darnell George, gave her good performance reviews until the 1993 inventory, which revealed that the warehouse had no "Reno Onyx" fabric in stock, even though Hawkins's computer records showed that it should have. Hawkins allegedly became suspicious and investigated the matter, concluding that George was improperly holding shipping records in a "hold file," causing the company not to be paid for fabric that had been shipped out. In April 1993, Hawkins reported to Microfibres's management that George was allegedly committing mismanagement

2

and/or theft.

According to Hawkins, George learned of Hawkins's investigation and initiated a pattern of harassment, including such behavior as eliminating Hawkins's overtime and stripping her of her duties as office manager. In response to Hawkins's initial report to management, the company's director of human resources, Janice Vogler, came to Tupelo to investigate Hawkins's reports. According to Hawkins, Vogler was unconcerned about the alleged improprieties.

George, after discussing Hawkins's allegations with Vogler, offered to resign. Vogler refused to accept the resignation and visited George's home because, according to Hawkins, Vogler was very upset about the whole matter.

After Vogler's investigationSSonce again, according to HawkinsSSGeorge began systematically filing complaints about Hawkins's behavior and relaying them to Vogler. On January 14, 1994, Vogler placed Hawkins on an indefinite, unpaid leave of absence, purportedly because of Hawkins's allegedly disruptive behavior.

Vogler referred Hawkins to Microfibres's employee assistance program ("EAP") to assist her in correcting that behavior. Vogler told Hawkins that she would have to cooperate fully with any treatment recommended through the EAP, and that an EAP provider had to provide her with clearance to return to work before she would be considered for reinstatement.

Two psychologists examined Hawkins through the EAP. The

3

first, who later stopped treating Hawkins because of a conflict of interest, reported his findings to Microfibres. His report stated that he could not release Hawkins to return to work because she persisted in denying that she had a problem. The second psychologist cleared Hawkins to return to work; however, while Hawkins appears to imply that Microfibres saw this report, the company contends that it never received the report until Hawkins made her mandatory pre-discovery disclosures during this litigation.

It is undisputed that Microfibres persisted in refusing to permit Hawkins to return to work. She remains on an unpaid, indefinite leave of absence.

Some issues of fact are hotly contested.[2] Hawkins contends that Microfibres has discharged her. While it is undisputed that Hawkins remains on leave, the parties cannot agree as to whether she has been discharged. That is a mixed question of law and fact, the answer to which depends in significant part upon the facts surrounding Microfibres's decision to place Hawkins on leave.

Another disputed fact involves the reasons behind Microfibres's decision to place Hawkins on leave. Microfibres contends that it was for disruptive behavior, including but not limited to the following: (1) refusing to speak with fellow employees for prolonged periods, even days at a time; (2) turning around and looking away when answering direct questions; (3) arguing frequently over incidental matters; (4) refusing to

---

[2] We focus here on contested facts relevant to the ADA claim, as we affirm summary judgment on the wrongful discharge claim.

help answer the telephones during busy periods; (5) refusing to cooperate in routine procedures, causing work to pile up; (6) staring at a co-worker for protracted periods; (7) sitting in her car in the parking lot for a long time while watching other employees leave work; (8) waving papers in George's face while saying in a sing-song voice, "I'm working, I'm working"; (9) letting her work pile up while reading recreational materials; (10) throwing documents and paperwork on co-workers' desks instead of handing it to them; (11) spying and eavesdropping on co-workers; and (12) dancing jigs around a co-worker's desk while singing or humming "When the Saints Go Marching In."

Hawkins either directly contradicts these allegations or characterizes them in a much more innocent light. For example, she admits to occasionally humming a song, usually one she heard at church, but denies that she danced a jig around a desk.

Hawkins offers an alternative reason for Microfibres's actions, contending that the company put her on leave because it regarded her as disabled. In support of this claim, she alleges that Vogler insist she undergo "behavior modification" therapy. According to Hawkins, Vogler advised her to apply for disability benefits, gave her disability claim forms, and referred her to psychologists for treatment.

## II.

We review a grant of summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir.

1992).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial.  *Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material.  *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992).  We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant.  *Id.*  If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented.  *Celotex*, 477 U.S. at 327.


                              III.

Mississippi is an employment-at-will state, although certain exceptions to that doctrine have arisen.  *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 606-07 (Miss. 1993).  *McArn* established a "narrow public policy exception" to the employment-at-will doctrine:  An employee may sue for wrongful discharge when fired

(1) for refusing to participate in an illegal act and (2) for reporting "illegal acts of his employer" to his employer or anyone else. *Id.* at 607.

Hawkins argues that she was fired in violation of the second prong of this public policy exception. That prong applies, however, only if the reported acts were (1) illegal and (2) committed by her employer.

Hawkins's conclusionary allegations and summary judgment evidence establish no more than a poor business practice or perhaps petty theft. Poor business practices are not illegal and do not satisfy *McArn*. We assume *arguendo* that Hawkins has established her allegations of petty theft and that petty theft is sufficient to meet the illegality requirement of *McArn*. She still cannot prevail, however, as she cannot demonstrate that the theft was committed by her employer.

Hawkins alleged that George, her supervisor, was stealing from Microfibres by manipulating its shipping records. Hawkins, however, necessarily must argue that George was acting on behalf of MicrofibresSS*i.e.*, as its agentSSin order to meet the requirement in *McArn* that the reported act have been committed by her employer. If George was stealing from Microfibres, then she was acting in her individual capacity, and not as Microfibres's agent. To assert the contrary would lead to the absurd conclusion that Microfibres was stealing from itself.

Hawkins therefore cannot prove that the act she reported was both illegal and an act of her employer. Because she cannot

7

satisfy the requirements of the *McArn* exception, her state law claim cannot proceed.

IV.

Hawkins also alleges that Microfibres violated the ADA by terminating her because the company regarded her as disabled. The ADA prohibits an employer from discriminating against a qualified individual with a disability because of the disability. 42 U.S.C. § 12112(a).

The ADA has three definitions of "disability." 42 U.S.C. § 12102(2). The third one defines "disability" as being regarded as having a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(C); *see also* 42 U.S.C. § 12102(A). Being significantly restricted in the general activity of working is a substantial limitation of a major life activity, but being unable to perform a particular job is not. *See* 29 C.F.R. § 1630.2(j)(3)(I); *see also* § 1630.2(j)(2)(I) (stating that working is a major life activity). "Qualified individual with a disability" means an individual with a disability who can perform the essential functions of his job, either with or without reasonable accommodation.

Hawkins brings a "regarded-as-having-a-disability" claim, proceeding under the ADA's third definition of "disability." An employment discrimination plaintiff, in order to defeat summary judgment on a "regarded-as-having-a-disability" claim under the ADA, must establish at least that a genuine issue of material fact

8

exists with respect to the following elements of the claim: (1) He was qualified, *i.e.*, could perform the essential functions of his job, either with or without reasonable accommodation; (2) he was regarded as "disabled" within the meaning of the ADA, *i.e.*, his employer regarded him as having a physical or mental impairment that substantially limited one or more major life activities; and (3) he was discriminated against because of the disability.

The record shows that a genuine issue of material fact exists as to each of these elements except the first. Microfibres admits that Hawkins is qualified, conceding that she is capable of performing her job.

Hawkins alleges that Microfibres considered her as having a mental impairment that substantially limited her ability to work in general. Microfibres admits that it placed her on an indefinite leave of absence, which constitutes a significant restriction on Hawkins's ability to work. Microfibres also concedes that it asked Hawkins to undergo psychological evaluations, although it claims that it did so to correct behavioral problems rather than a mental impairment. Microfibres's position in this regard is undermined by the fact that Vogler gave Hawkins an application to fill out so that she could receive disability benefits. This application, furthermore, was entitled "Disability Claim."

Finally, Hawkins contends that Microfibres put her on an unpaid leave of absence because it regarded her as disabled. The most direct evidence on this element is that Vogler gave Hawkins the disability forms right after placing her on an indefinite leave

9

of absence.  Furthermore, George's documentation of Hawkins's behavior, which George had made available to the company, concluded that "[s]omething [was] wrong" with her [Hawkins] and that she was "ill."[3]

It would not be beyond reason for a trier of fact to conclude from this evidence that Microfibres regarded Hawkins as disabled. Summary judgment on this claim was therefore inappropriate. Accordingly, we AFFIRM summary judgment on the wrongful discharge claim, REVERSE summary judgment on the ADA claim, and REMAND for further proceedings as to the latter.  We express no view on the parties' respective chances of ultimate success in this case.

---

[3] Hawkins also points to the fact that she was not reinstated to her former position, even after the second psychologist from the EAP cleared her to return to work.  Whether Microfibres had access to the second psychologist's report is critical to an accurate interpretation of this action.  In any event, a jury could consider the first psychologist's reportSSwhich characterized Hawkins as having a problem preventing her from returning to workSSas evidence supporting the inference that Microfibres resisted reinstating Hawkins because it regarded her, in a general sense, as unfit to return to work.