**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-30881
Summary Calendar
_____


CHARLES D. DARR, JR.,

                              Plaintiff-Appellant,


                    VERSUS


CHEVRON, U.S.A., INC.;
CHEVRON INDUSTRIES, INC.;
CHEVRON INTERNATIONAL OIL COMPANY, INC.;
CHEVRON OIL COMPANY;
CALIFORNIA OIL COMPANY;
and
ENRON OIL & GAS COMPANY,

                              Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(96-CV-2818-R)
_____
April 2, 1998


Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


        Charles Darr brings this Texas negligence action under the

Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C.

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

§ 1333(a)(2)(A).  Finding no reversible error, we affirm.


I.

On August 29, 1995, Darr was injured when his shirt caught a protruding "jack bolt" on an oil platform stairwell and caused him to tumble down the stairs.  Darr maintains that this fall led to back and knee injuries, which later required surgery.  Darr was an employee of Santa Fe Minerals, Inc. ("Santa Fe"), at the time of his accident.

Santa Fe and Chevron, U.S.A., Inc. ("Chevron"),[1] jointly owned and operated the platform, located on a tract of leased federal land, High Island Block 120 ("HI-120"), and situated on the Outer Continental Shelf, adjacent to the State of Texas.  The two companies had oil and gas leases from the United States on adjoining tracts and had agreed to operate jointly this one platform in order to maximize their profits.

The agreements between Santa Fe and Chevron provided that the two companies would share proportionately the profits and expenses of the platform and would share control of the platform's operations.  Both companies contributed to a joint fund that paid the costs for employees to operate the platform, and that bore the risk of loss to such employees for their work at the site.

On May 1, 1995, Santa Fe and Enron Oil & Gas Company ("Enron")

_____

[1] Chevron, U.S.A., Inc., is the only Chevron defendant having any interest in this litigation.

2

entered a Purchase and Sale Agreement in which Santa Fe agreed to sell Enron certain of its energy operations, including its interests in the HI-120 lease and oil platform located thereon. On August 29, 1995 (coincidentally, the date of Darr's injury), Santa Fe assigned its lease interest in HI-120 to Enron. The assignment was delivered to Enron at closing, which took place on August 31, 1995.

## II.

We review a summary judgment de novo. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The movant bears the burden of demonstrating that there is an absence of evidence to support the respondent's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The non-movant then must set forth specific facts showing there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). If there are fact issues

3

presented, we review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 323; *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

III.

Darr sues Enron claiming that it was negligent in operating *its* oil platform.[2] Under OCSLA, Texas law governs Darr's suit. *See* 43 U.S.C. § 1333(a)(2)(A).

Texas law provides that "[a]n owner or occupier of land has a duty to use reasonable care to keep the premises under his control in a safe condition." *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985) (citation omitted).

> Restatement (Second) of Torts § 328E (1965) defines "owner or occupier" in terms of "possessor":
>
> A possessor of land is
>
> > (a) a person who is in occupation of the land with intent to control it or
> >
> > (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
> >
> > (c) a person who is entitled to immediate

---

[2] To avoid LHWCA employer immunity, Darr must maintain that he was employed by Santa Fe, not Enron. *See infra* part IV.

> occupation of the land, if no other person is in possession under Clauses (a) and (b).
>
> *Id.* The standard of conduct required of a premises occupier toward his invitees is the ordinary care that a reasonably prudent person would exercise under all the pertinent circumstances. *See* Restatement (Second) of Torts § 343 (1965); *Corbin*, 648 S.W.2d at 295. This duty only arises, however, for an *occupier with control* of the premises. *See Redinger*, 689 S.W.2d at 417; *Sem v. State*, 821 S.W.2d 411, 414-15 (Tex. App.SSFort Worth 1991, no writ); *Chevron U.S.A., Inc. v. Lara*, 786 S.W.2d 48, 49 (Tex. App.SSEl Paso 1990, writ denied).

*Gunn v. Harris Methodist Affiliated Hosps.*, 887 S.W.2d 248, 251 (Tex. App.SSFort Worth 1994, writ denied).

Darr has alleged insufficient evidence to create a genuine fact issue of whether Enron was a possessor of the oil platform at the time of his injuries. Darr primarily relies on his defective affidavit to show that Enron was an "occupier with control" of the platform. This affidavit states only that [p]rior to the incident on August 29, 1995, [Enron] came to High Island platform on several occasions to inspect for environmental hazards" and that "During June and July of 1995, stimulation activities of the wells were conducted by Santa Fe Minerals, Inc. at [Enron's] request, including the well at High Island 120, in order to increase well production." This evidence alone is insufficient to raise a fact issue whether Enron was an "occupier with control" of the land under Texas law. *See Redinger*, 689 S.W.2d at 418.

Darr also points to the Purchase and Sale Agreement, which, he maintains, "turned over blanket authority and control to Enron for

5

operations [of the HI-120 platform], starting May 1, 1995." This agreement, however, was only an agreement to sell some of Santa Fe's assets to Enron; it did not accomplish a sale, a transfer of possession, or a change in control from Santa Fe to Enron.

Without more, Darr's claim against Enron, therefore, fails. His evidence to avoid judgment as a matter of law does not do enough to raise a fact issue about Enron's possession of the oil platform on August 29, 1995SSa necessary element of his negligence claim against Enron.

IV.

Darr sues Chevron for negligence because it was a co-owner of the oil platform, which was under its joint control. Darr is precluded from seeking tort recovery against his employer, Santa Fe, under the LHWCA, as LHWCA benefits provide the sole remedy. *See* 43 U.S.C. § 1333(b); 33 U.S.C. § 905.

Under our well-settled caselaw, LHWCA employer immunity also prevents Darr from seeking recovery against those parties forming part of a joint venture with his employer to operate the oil platform where the injury occurred. *See, e.g.*, *Heavin v. Mobil Oil Exploration & Producing Southeast, Inc.*, 913 F.2d 178, 179-80 (5th Cir. 1990); *Davidson v. Enstar Corp.*, 860 F.2d 167, 168 (5th Cir. 1988) (per curiam) (on rehearing); *Bertrand v. Forest Corp.*, 441 F.2d 809, 810-11 (5th Cir. 1971) (per curiam). We have previously

6

outlined a four-factor test for determining whether such a joint venture exists for LHWCA employer immunity purposes. *See Davidson v. Enstar Corp.*, 848 F.2d 574, 577-78 (5th Cir.), *modified on rehearing on other grounds*, 860 F.2d 167 (5th Cir. 1988).

The factors that a court considers are: "1) whether the parties intended to form a partnership or joint venture; 2) whether the parties share a common interest in the subject matter of the venture; 3) whether the parties share profits and losses from the venture; and 4) whether the parties have joint control or the joint right of control over the venture." *Id.* at 577. A joint well operation can be a "joint venture" for purposes of LHWCA employer immunity even if the parties' agreement explicitly disclaims interpretation of the agreement as such. *See Davidson*, 860 F.2d at 168.

The agreements between Chevron and Santa Fe make plain that the factors of the this test are met. The agreements governing the operation of the oil platform between the two companies are like those in *Heavin* and *Bertrand*. As in those cases, here, both companies agreed to share control of the platform's operations and to pay employees from a common fund and to share profits from the platform's production.[3] So, Chevron is entitled to employer

---

[3] The extension of LHWCA immunity to Chevron also makes sense in light of the policy concerns of that act. Congress intended to decrease the transaction costs of litigation against employers by establishing a "no-fault" workers compensation system. An employer contributes to an insurance fund, which then forms the basis for the employee's recovery. The employer's contribution to the fund, in essence, is an *ex ante* probabilistic payment of liability, for which,

immunity for this ordinary negligence suit under the terms of the LHWCA.

AFFIRMED.

---

in return, the employer is immune from ordinary negligence suits brought by employees.

If two companies share the cost of employees by contributing to a joint accountSSan account that also pays the premiums to the LHWCA insurance fundSSit makes no sense to allow the injured worker to seek recovery through the tort system against the employer's joint venturer. Allowing tort recovery in this case against Chevron would eviscerate the legislative bargain by requiring the defendant corporation both to contribute to the LHWCA fund, through deductions from its joint account with Santa Fe, and to be subject to tort liability.