United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 18, 1997**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 97-50194
Summary Calender
_____

VERNON G. JOHNSON,

Plaintiff-Appellant,

VERSUS

BAYLOR UNIVERSITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(W-96-CV-242)
_____
September 18, 1997

Before JOLLY, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Vernon Johnson appeals a summary judgment in favor of Baylor University on employment discrimination claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Finding no error, we affirm.

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Baylor's former president, Herbert Reynolds, hired Johnson to be the university's chief pilot beginning the first day of 1992. In that position, Johnson was responsible for shuttling Reynolds and other university VIP's on the university's airplane. When hired, Johnson weighed approximately 275 pounds. His weight was a source of irritation to Reynolds, who insisted that Johnson lose weight. In fact, Reynolds made the continuation of Johnson's employment conditional on losing over one hundred pounds during the first ninety days of employment.

Not surprisingly, Johnson was unable to lose so much weight in so little time. Reynolds, however, did not terminate Johnson at the end of the first ninety days. Instead, Reynolds repeatedly made Johnson and the relevant university officials aware of Johnson's expertise as a pilot, while at the same time pressing him to lose weight, to improve his appearance at work (such as tucking in his shirt tail and remembering to wear a suit jacket on the airplane), and to correct his grammatically flawed parlance.

Reynolds noted that Johnson's position put him in contact with many important university benefactors and therefore required a certain comeliness on Johnson's part that might not otherwise be required. Moreover, Reynolds expressed concern that Johnson's weight made him a health risk, so he continued to prod Johnson to lose weight in order to help to reduce the university's health insurance costs.

2

Consequently, Reynolds warned Johnson that failure to correct these problems put Johnson's position at Baylor in jeopardy. In August 1994, Reynolds fired Johnson, noting a substantial failure to ameliorate the problems noted above.

## II.

Johnson sued Baylor,[1] an institution receiving federal funds, claiming that his termination violated the ADA, 42 U.S.C. § 12112(a) (prohibiting discrimination against the disabled in the workplace), and a substantially similar provision of the Rehabilitation Act, 29 U.S.C. § 794 (prohibiting institutions receiving federal funds from discriminating against the disabled).[2] Johnson based his statutorily required showing of a disability on a theory that Baylor, through Reynolds, regarded him as being unemployable because of his weight and that this perception led to his termination. Johnson alleged only a "regarded as" claim and has never asserted that his weight was in fact a disability.

Baylor contended that Johnson had failed to present sufficient

---

[1] Subject matter jurisdiction based on 28 U.S.C. §§ 1331, 1343.

[2] The relevant portion of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Furthermore, and relevant for purposes of this case: "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 . . . ." *Id.* § 794(d). Accordingly, the ensuing discussion in the text of the ADA's disability requirement should be treated as encompassing the disability requirement under the Rehabilitation Act as well.

evidence that Reynolds regarded him as being substantially impaired from participating in a major life activity, as required by the ADA to show a disability. Because a plaintiff must show a disability in order to proceed under the ADA, Baylor accordingly moved for summary judgment.

The district court agreed with Baylor, finding that Johnson had failed to offer sufficient evidence that Reynolds regarded Johnson's weight as substantially interfering with the only major life activity at issueSS"working." Because Johnson could not make a showing that he was disabled under the ADA, the court granted summary judgment.

III.

We review a summary judgment de novo. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the

4

non-movant must set forth specific facts showing that there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Celotex*, 477 U.S. at 327; *Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).


IV.

In order to understand Johnson's evidentiary burden better, we first review the ADA's mandate: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).[3] Therefore, a plaintiff is obliged to make an initial showing that

---

[3] No one denies that Baylor is a "covered entity" under the ADA or the Rehabilitation Act.

he has a "disability" in order to invoke the ADA's protections.[4]

The ADA defines a "disability" as follows:

> The term "disability" means, with respect to an individual SS
>
> > (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> >
> > (B) a record of such an impairment; or
> >
> > (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Johnson alleges that he is disabled under § 12102(2)(C): that Baylor regarded him as having a physical impairmentSSobesitySSthat substantially limits his major life activity of "working," as defined by EEOC regulation. *See* 29 C.F.R. § 1630.2(i) ("*Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").

The EEOC regulations strictly construe "substantially limits

---

[4] A plaintiff can prove discrimination under the ADA either directly or indirectly. Directly, he must show that he is disabled under the act; that with or without reasonable accommodation he could perform the job; and that the employer discharged him because of his disability. *See* 42 U.S.C. § 12112(a); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 117 S. Ct. 586 (1996).

Alternately, he can use a burden-shifting analysis to make out a *prima facie* case of discrimination. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, he must show that he is disabled under the act; that he is qualified with or without accommodation; that he was subject to an adverse employment action; and finally, that he was replaced with a non-disabled person. *See id*; *Burch v. Coca-Cola Co.*, No. 95-10990, 1997 WL 425943, at *13 (5th Cir. July 30, 1997); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995). Both methods, however, require that the plaintiff make an initial showing that he is "disabled," as statutorily defined.

the major life activity of working." Specifically, the regulations

provide:

> (3) With respect to the major life activity of *working*SS
>
>> (i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
>>
>> (ii) In addition . . ., the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
>>
>>> (A) The geographical area to which the individual has reasonable access;
>>>
>>> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skill or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>>>
>>> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not utilizing similar training, knowledge, skills or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3).

Although what "substantially limits [the] major life activity

[of working]" ultimately means is determined on a case-by-case

basis, *see Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir.

7

1992); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986), the statutory language plainly does not prevent all adverse employment actions against a physically- or mentally-impaired employee. Thus, such an employee does not obtain tenure at his position because of his impairment. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996); 29 C.F.R. § 1630.2(j)(3)(i). Instead, the "substantially limits" statutory language, as it relates to "working," strikes a balance: It allows a disabled person a foot in the door of the labor market, *see Burch*, 1997 WL 425943, at *6, while at the same time, it tries not to impose an undue burden on an employer's freedom to make employment decisions he feels are in the best interests of his business, *see Tudyman v. United Airlines*, 608 F. Supp. 739, 747 (C.D. Cal. 1984) ("[P]rivate employers are generally free to be arbitrary and even capricious in determining whom to hire . . . .").

Johnson contends that Baylor perceived that his obesity substantially limited his major life activity of working. Therefore, once Baylor moved for summary judgment asserting that Johnson lacked the evidence necessary to go forward with a trial, Johnson, in order to defeat summary judgment, was obliged to offer enough evidence to show that there was a genuine fact issue that Baylor regarded Johnson's obesity as substantially limiting his major life activity of working. *Cf. Hanks*, 953 F.2d at 997. More specifically, Johnson would have to offer some evidence that Baylor

8

believed (1) that Johnson could not obtain a position in the geographical area because of his obesity; (2) that Johnson could not obtain a job in the class of jobs utilizing similar skills and trainingSShere, as a pilotSSbecause of his obesity; or (3) that Johnson was unable to obtain a job, in the same geographical area, that did not utilize the same skills or training, but for which Johnson's obesity also disqualified him. *Cf.* 29 C.F.R. § 1630(j)(3)(ii)(A)-(C).

Johnson contends that requiring evidence of the factors mentioned above, which are taken verbatim from the EEOC's regulations, *see* 29 C.F.R. § 1630.2(j)(3)(ii), requires him to prove that *no other employer* in the relevant geographical or skill class areas would hire him. Not so. The "regarded as," or "perception," prong of the "disability" definition requires that a plaintiff provide evidence that the *employer thought* that other employers would not hire him because of his obesity. *See* 42 U.S.C. § 12102(2)(C).

Johnson casually addresses this evidentiary requirement and only with vague accusations. In no instance does any part of the record, including the pleadings, the briefs, the depositions, the exhibits, and the other record contents, provide more than general assertions about Baylor's perceptions of Johnson's general employability. Yet, such evidence lies at the heart of Johnson's required showing that he is "disabled," *see* 42 U.S.C. §

9

12102(2)(C), and is thus necessary to prevent summary judgment.

A review of the evidence, through the three factors outlined in 29 C.F.R. § 1630.2(j)(3)(ii), reveals insufficient evidence to prevent summary judgment. First, Johnson's deposition and Reynolds's affidavit show conclusively that Reynolds regarded Johnson as a skilled pilot. Both parties acknowledge that Reynolds did not believe Johnson was unable to work in the class of pilot jobs because of his weight.

Second, Johnson offers no evidence that Baylor thought his weight made him unemployable in the Waco area labor market or elsewhere, and thus Reynolds's affidavit to the contrary stands unopposed. Finally, Johnson offers no evidence to contradict Baylor's affidavit that Baylor believed Johnson could obtain work in another class of jobs, such as airplane maintenance.

V.

We comment now on two of Johnson's other contentions. First, Reynolds's belief that Johnson could not get "a job at Baylor" or "a job in public relations" there or elsewhere is not sufficient to meet the "substantially limiting . . . working" requirement outlined above. *See, e.g.*, *Bridges v. City of Bossier*, 92 F.3d 329, 332-34 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 770 (1997). Such a construction of "working" would read "substantially" right out of the "substantially limits" language of § 12102(2); it would

force an employer to guarantee an employee a specific position. Such a result would run contrary to the ADA's intentions.[5]

Second, an employer's concern with a plaintiff's insurability could, as Johnson notes, provide indirect evidence of the employer's belief of the employee's general unemployability.[6] Thus, such evidence could help to meet the "regarded as" prong that a plaintiff is disabled. *See* 42 U.S.C. § 12102(2)(C).

From the record in this case, however, Johnson has offered no evidence to raise a genuine issue of material fact that Reynolds's concern about insurance costs resulted in Johnson's termination. Although Reynolds was concerned that overweight people get sick more often, and thus increase the costs of health insurance, Johnson offers no evidence to overcome Baylor's sworn assertions that appearance standards, not insurance costs, led to his termination.

Nor does Johnson offer any evidence that his health insurance costs led Baylor to perceive him as generally unemployable. Indeed, Johnson's own discovery revealed that Reynolds, although worried about health insurance costs of portly people, knowingly embraced the university's employment (and presumably also its

---

[5] *See Heilweil v. Mount Sinai Hosp.*, 32 F.2d 718, 723 (2d Cir. 1994), *cert. denied*, 513 U.S. 1147 (1995); 12 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

[6] *See* 29 C.F.R. § 1630(l) app. ("[C]ommon attitudinal barriers . . . frequently result in employers excluding individuals with disabilities.  These include concerns regarding . . . insurance . . . .").

11

health insurance coverage) of at least two other overweight individuals.

## VI.

The fact of the matter is that this single, particular job carried with it certain appearance standards. *Cf. Tudyman*, 608 F. Supp. at 745 (upholding an airline's weight limit for flight attendants). When Johnson failed to meet these standards, he was terminated. There is no error, and the judgment, accordingly, is AFFIRMED.